**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PARISH OF LAFOURCHE** | **CIVIL ACTION** |
| **VERSUS** | **NO.  23-3472** |
| | **c/w 23-3479, 23-3475** |
| **INDIAN HARBOR** | **SECTION: "E" (5)** |
| **INSURANCE COMPANY, ET AL.** | |

*Applies to: All Cases*

## ORDER AND REASONS

Before the Court is a Motion to Remand[1] filed by Plaintiff, Parish of LaFourche (the "Parish"). Defendants are several insurers who issued surplus line insurance policies to the Parish. Invoking the *Burford* abstention doctrine,[2] the Parish argues the dispute between the parties involves such vital state interests that this Court should abstain from exercising jurisdiction. Because the Court finds abstention is inappropriate, the motion is **DENIED**.

## BACKGROUND

This is a dispute over insurance coverage in the wake of Hurricane Ida, which struck the Louisiana coast in August 2021 and damaged many of the Parish's government buildings.[3] An insurance adjuster service employed by the Defendants produced a rough estimate of approximately $35 million in damages to the Parish's buildings and other property.[4] However, the Defendants tendered only $19 million to the Parish—a $16

---

[1] R. Doc. 20.
[2] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).
[3] R. Doc. 1-2 at pp. 1–4.
[4] *Id.* at p. 6.

million difference from the adjustment, and an amount the Parish alleges is "arbitrary," "capricious," and evidence of "bad faith."[5]

On June 15, 2023, the Parish sued Defendants in the 17th Judicial District Court, LaFourche Parish.[6] On August 16, 2023, the Defendants, invoking 28 U.S.C. §§ 1441 and 1446, removed the suit to this Court and alleged jurisdiction pursuant to 9 U.S.C. §§ 202, 203, 205, and 28 U.S.C. § 1332.[7] Defendants' primary basis for the removal is their contention that the insurance policy at issue in this case contains a "valid arbitration clause [that] is governed by" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which gives rise to federal question jurisdiction.[8]

On November 1, 2023, Plaintiffs filed a motion to remand,[9] arguing this Court should abstain under the *Burford* abstention doctrine because "the regulation of surplus lines insurance" is "within the purview" of Louisiana state law and interests.[10] Defendants filed their response in opposition on November 8, 2023,[11] and Plaintiff replied on November 17, 2023.[12] Defendants filed a supplemental opposition on February 1, 2024.[13]

## LAW AND ANALYSIS

This suit sits at the intersection of Louisiana law, federal law, and an international treaty. The complex legal framework—and the Parish's confidence that Louisiana courts should supply the ultimate answer—is the basis for the Parish's motion.

---

[5] *Id.*
[6] *Id.* at p. 1.
[7] R. Doc. 1.
[8] *See generally* R. Doc. 1 at p. 2. Alternatively, the Defendants allege diversity jurisdiction, 28 U.S.C. § 1332, is appropriate. R. Doc. 1 at p. 8.
[9] R. Doc. 20.
[10] R. Doc. 20-1 at pp. 1–3.
[11] R. Doc. 22.
[12] R. Doc. 28.
[13] R. Doc. 32.

The Parish argues that the regulation of insurance is a "vital state interest," and, accordingly, this Court must abstain and let Louisiana state courts decide the underlying disputes. Specifically, the Parish points to La. R.S. § 22:868 and its "mixed bag" of interpretations by federal courts as evidence that "abstention is warranted here" to allow "Louisiana [s]tate [c]ourts to address a matter of great public interest to the citizens of its State: surplus lines insurance contracts."[14] In opposition, Defendants argue the motion to remand is untimely and the arbitration clause is enforceable under the Convention, so no vital state interest is implicated.[15]

As an initial matter, the motion is timely. *Grace Ranch*,[16] the case from the United States Court of Appeals for the Fifth Circuit relied on by Defendants for their untimeliness argument, deals in part with whether that court has appellate jurisdiction over a trial court's remand order based on abstention.[17] Because remand based on abstention is discretionary, the Fifth Circuit held such a remand is not based on a removal "defect," i.e., some jurisdictional or procedural flaw, within the meaning of 28 U.S.C. § 1447(c), and is not subject to the requirement that it be filed within 30 days after the filing of the notice of removal.[18] As applied to this case, the Plaintiff's motion to remand based on discretionary abstention is not subject to the requirement that it be filed within 30 days

---

[14] *Id.* at pp. 4–5.
[15] R. Doc. 22.
[16] *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301 (5th Cir. 2021), *as revised* (Feb. 26, 2021).
[17] *See id.* at 310–313.
[18] *Id.* at p. 312–313.

of the filing of the notice of removal.[19] As a result, the Parish's motion to remand is timely.[20]

"'The term abstention refers to judicially created rules whereby federal courts may not decide some matters before them even though all jurisdictional and justiciability requirements are met.'"[21] *Burford* abstention permits a federal court to dismiss a case when it involves complex issues of unsettled state law that are better resolved through a state's regulatory scheme.[22] As explained below, the high bar of *Burford* abstention is not met in this case, and the Court must deny the motion to remand.

*Burford* requires that when "timely and adequate state-court review is available," a federal court "sitting in equity," like this Court, "must decline to interfere with the proceedings or orders of *state administrative agencies*" in the following scenarios: "(1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;'" or "(2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of

---

[19] *See id.*; *see also, e.g. Lentz v. Trinchard*, 730 F.Supp.2d 567, 587 (E.D. La. 2010) (citing *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 588 (5th Cir. 1998) and *Martin Ins. Agency, Inc. v. Prudential Reinsurance Co.*, 910 F.2d 249, 254 (5th Cir. 1990)) ("*Burford* abstention may be raised at any time," and "it may be raised by a court *sua sponte*.").

[20] It appears to the Court that Defendants intentionally misquoted *Grace Ranch* as saying, "[A]bstention rulings, are discretionary decisions animated by federalism concerns from the class of 'defects' that must be raised within 30 days of removal." R. Doc. 22 at p. 4. The sentence in *Grace Ranch* actually reads: "The better reading [of § 1447(c)] excludes supplemental jurisdiction remands—which, like abstention rulings, are discretionary decisions animated by federalism concerns (see 28 U.S.C. § 1367(c)(1))—from the class of 'defects' that must be raised within 30 days of removal." 989 F.3d at 312. Supplemental jurisdiction remands *and* abstention remands are *not* subject to the 30-day timeline for filing. Defense counsel should be mindful of their obligations under Rule 11(b) of the Federal Rules of Civil Procedure and of their duty of candor toward the tribunal. La. State Bar, Art. 14, Rules of Professional Conduct, Rule 3.3.

[21] *Chisom v. Jindal*, 890 F. Supp. 2d 696, 718 (E.D. La. 2012) (quoting Erwin Chemerinsky, Federal Jurisdiction 811 (6th ed. 2012)).

[22] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996).

substantial public concern.'"[23]

The doctrine's purpose is to "discourage" federal courts from "second-guessing of state regulatory matters."[24] That is, a court should abstain pursuant to *Burford* where the subject matter involved concerns *state regulatory action* regarding matters of vital state interest.[25] "Federal courts have the discretion in these abstention contexts to abstain and decline the exercise of jurisdiction." [26] Even so, "[t]he abstention doctrines are 'extraordinary and narrow exceptions' to the rule that federal courts must exercise the jurisdiction that has been conferred" on them.[27] *Burford* abstention is usually applied to state regulatory matters such as establishing rates for natural gas or transportation, discontinuing railroad passenger services, [28] discontinuing intrastate air service, [29] or applying state eminent domain procedures.[30]

The Fifth Circuit  has noted that "[e]ssentially, Burford instructs a district court to weigh the federal interests in retaining jurisdiction over the dispute against the state's interest in independent action to uniformly address a matter of state concern, and to abstain when the balance tips in favor of the latter." [31] In addition, the Fifth Circuit has "distilled" the Supreme Court's guidance into five factors a district court should consider in determining whether to abstain under *Burford*:

---

[23] *Empire Pipeline, Inc. v. Pendleton*, 472 F. Supp. 3d 25, 39-40 (W.D.N.Y. 2020) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)) (emphasis added).
[24] *Sierra Club v. City of San Antonio*, 112 F.3d 789, 796 (5th Cir. 1997); *see also Quackenbush*, 517 U.S. at 727.
[25] See *Burford*, 319 U.S. at 315 (involving management and regulation of mineral resources under Texas law); *Sierra Club*, 112 F.3d at 789 (involving management and regulation of an aquifer under Texas law).
[26] *Pendleton*, 472 F. Supp. 3d at 40 (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100-01 (2d Cir. 2012)).
[27] *McKinnon v. Wash. Dept. of Corrections*, No. C21-5097-BHS-MLP, 2021 WL 1894071, at *1 (W.D. Wash. May 11, 2021) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).
[28] *Alabama Public Services Commission v. Southern Railway,* 341 U.S. 341 (1951).
[29] *Allegheny Airlines v. Pennsylvania Pub. Util. Com'n,* 465 F.2d 237 (3d Cir. 1973).
[30] *Ahrensfeld v. Stephens,* 528 F.2d 193 (7th Cir.1975)
[31] *Webb v. B.C. Rogers Poultry, Inc.,* 174 F.3d 697, 700 (5th Cir.1999).

(1) whether the cause of action arises under federal or state law;
(2) whether the case requires inquiry into unsettled issues of state law or into local facts;
(3) the importance of the state interest involved;
(4) the state's need for a coherent policy in that area; and
(5) the presence of a special state forum for judicial review. [32]

Courts "must also keep in mind that *Burford* abstention is disfavored as an abdication of federal jurisdiction."[33]

Beginning with the first factor, whether the cause of action arises under federal or state law, the Third Circuit has found in *Grode v. Mutual Fire, Marine and Inland Ins. Co.*[34] that seeking to compel arbitration by raising the Convention and the Federal Arbitration Act(F.A.A.) as a defense gives a federal court independent jurisdiction. "Thus, the burden on the Commissioner to demonstrate that abstention is appropriate in this case is heightened."[35] "[T]he presence of federal-law issues must always be a major consideration weighing against surrender."[36] This case involves a federal question and the enforcement of international arbitration agreements is a substantial federal concern. Because the action arises under federal law, the first factor weighs against abstention.

The second factor, whether the case requires inquiry into unsettled issues of state law, does not justify abstention. It is true that the Louisiana Supreme Court has not spoken definitively on the application of § 22:868 to surplus lines insurers like the Defendants. [37] However, "[a]lthough the risk that the federal court will confront an unsettled state-law issue builds more momentum in favor of abstention, it does not on its

---

[32] *Grace Ranch*, 989 F.3d at 314 (quoting *Aransas Proj. v. Shaw*, 775 F.3d 641, 649 (5th Cir. 2014)).
[33] *Id.* (quotation omitted).
[34] 8 F.3d 953 (3rd Cir. 1993).
[35] *Id.*
[36] *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983).
[37] *See* R. Doc. 20-1 at p. 2 n.1 (describing divergent applications of Louisiana law with respect to arbitration and surplus line insurers).

6

own justify a federal court's refusal to hear the case."[38] Indeed, federal courts "frequently decide unsettled questions of state law," and "when the question of state law is especially important or difficult to resolve," the Fifth Circuit "can ask a state court to decide that issue while still retaining federal jurisdiction over the case as a whole."[39]

The third factor is the importance of the state interest involved. Though insurance is a subject matter generally left to state regulation and legislation,[40] the Parish overstates the impact of the Louisiana Insurance Code[41] on its argument for *Burford* abstention. "*Burford* abstention is warranted when the state interests at stake are 'paramount.'"[42] The mere existence of "powerful state interests," a descriptor surely appliable to insurance regulation in storm-tossed Louisiana, "will not always justify abstention."[43] The State of Louisiana is not a party in this action[44] and the state's interests at stake are not paramount. At most, "Louisiana has only a general interest in the outcome of this suit."[45] When there are countervailing federal interests, as there are in this case because the Defendants rely on the Convention and the F.A.A., the primacy of the state's interest is undermined. Even cases involving an issue arguably of more importance to the State of Louisiana than insurance regulation, such as oilfield remediation, have been found not to justify *Burford* abstention.[46] The third factor disfavors abstention.

---

[38] *Grace Ranch*, 989 F.2d at 515.
[39] *Id.* (collecting examples of certified questions to state courts).
[40] *See, e.g.*, *Paul v. Virginia*, 75 U.S. 168 (1868) (ruling that the insurance industry falls beyond the reach of Congress), *abrogated* by *United States v. S.-E. Underwriters Ass'n*, 322 U.S. 533 (1944) (holding insurance can be regulated through Congress's Commerce Clause powers); McCarran-Ferguson Act of 1945, 15 U.S.C. §§1011–1015 (responding to *South-Eastern Underwriters* by codifying that the "business of insurance" is exempt from most Congressional action).
[41] La. R.S. 22:1 *et seq.*
[42] *Grace Ranch*, 989 F.3d at 316 (quoting *Quackenbush*, 517 U.S. at 728).
[43] *Id.* (citation omitted).
[44] *Cf. id.* at 307–08.
[45] *Id.* at 309.
[46] *C.S. Gaidry, Inc. v. Union Oil Co. of Cal.*, 2009 WL 2765814 (E.D. La. Aug. 27, 2009).

Nor does the fourth factor, the state's need for a coherent policy in the subject matter area, favor abstention. *Burford* abstention is appropriate "when a state administrative scheme guards an '*over-all plan* of regulation . . . of vital interest to the general public' from federal interference."[47] Such an overall administrative plan is absent here: it is not enough that Louisiana and its legislature be interested in the outcome of this case because they are "concern[ed]" with "[p]rotecting persons seeking insurance in this state"[48] through enforcement of the laws. "[T]he State always has an interest in enforcing its laws."[49] This case does not involve a complex regulatory scheme, only whether the dispute must be arbitrated.

As to the fifth factor, there is no special state forum for judicial review of the decision in this case. Unlike this case, the namesake *Burford* case involved a truly complex state administrative scheme, with attendant state forums, that would have been disrupted by federal court interference. The Texas legislature charged the Texas Railroad Commission with broad oversight of "conservation of oil and gas in Texas, an aspect of 'as thorny a problem as has challenged the ingenuity and wisdom of legislatures.'"[50] At issue was a permit to drill in the East Texas oil field, in which 900 operators had drilled 26,000 wells. Texas law "provide[d] for concentration of all direct review of the Commission's orders in the State district courts of Travis County." This "[c]oncentration of judicial supervision" allowed the state courts "to acquire a specialized knowledge which is useful in shaping the policy of regulation of the ever-changing demands" in oil and gas

---

[47] *Id.* (quoting *Burford*, 219 U.S. at 324) (emphasis added).
[48] R. Doc. 20-1 (quoting L.A. R.S. §22:431(1)).
[49] *Grace Ranch*, 989 F.3d at 309.
[50] *Burford*, 319 U.S. at 318 (quoting *R.R. Comm'n of Texas v. Rowan & Nichols Oil Co.*, 310 U.S. 573, 578 (1940)).

conservation.[51] In sum, the Supreme Court concluded "the availability of an alternative, federal forum threatened to frustrate the purpose of the complex administrative system that Texas had established."[52]

No such scheme exists with respect to Louisiana insurance law today. Analogizing to the Texas Railroad Commission, the Parish argues that the Louisiana Supreme Court is the "ultimate arbiter" of the state laws at issue here.[53] Taken at face value, the Parish's argument is one against diversity jurisdiction, as—in the absence of supreme federal law— there is no state law issue on which the Louisiana Supreme Court is *not* the final word.

The Parish also is plainly wrong that "all lawsuits against surplus lines insurance companies must be filed in Louisiana [s]tate [c]ourts."[54] This Court routinely exercises original jurisdiction over cases involving surplus line insurers when those cases satisfy the requirements for diversity jurisdiction. [55] Moreover, cases against surplus lines carriers asserting rights under the Convention and the F.A.A. establish federal question jurisdiction. Louisiana's state court system is not the kind of special state forum contemplated by *Burford*, "in which Texas allowed judicial review of Railroad Commission orders only the state district courts sitting in Austin."[56] Louisiana law allows suits against surplus line insurers to be brought "in the district court of the parish in which the cause of action arose,"[57] making each district court statewide a possible forum. Federal law allows this suit to be brought in this Court.[58]

---

[51] *Id.* at 327.
[52] *Quackenbush*, 517 U.S. at 706.
[53] R. Doc. 20-1 at p. 7.
[54] R. Doc. 20-1 at p. 7.
[55] *See, e.g.*, *Cornerstone Ass'n v. Indep. Specialty Ins. Co.*, CV 23-2478, 2023 WL 8257987 (E.D. La. Nov. 29, 2023); *Ness Healthcare NFP v. Starr Surplus Lines Ins. Co.*, CV 23-3021, 2023 WL 6976892 (E.D. La. Oct. 23, 2023).
[56] *Grace Ranch*, 989 F.3d at 318 (citing *Burford*, 319 U.S. at 326).
[57] La. R.S. § 22:442(A).
[58] 28 U.S.C. § 1332.

Hence, this case does not "involve an integrated state regulatory scheme in which a federal court's tapping on one block in the Jenga tower might cause the whole thing to crumble."[59] This Court's exercise of jurisdiction over this matter is not a threat to the "fundamental *Burford* concern—that a federal court might undermine 'a comprehensive scheme governing a matter of vital state interest . . . where uniform application of rules was important.'"[60] The application of these five factors makes clear that the high bar of *Burford* abstention is not met in this case. The Court will not invoke such an "extraordinary and narrow exception"[61] to its duty to exercise its jurisdiction in this matter.

## CONCLUSION

The Parish's Motion to Remand is **DENIED**.

**New Orleans, Louisiana, this 2nd day of February, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[59] *Grace Ranch*, 989 F.3d at 319.
[60] *Id.* (quoting *Sierra Club*, 112 F.3d at 796).
[61] *Colo. River Water*, 424 U.S. at 813.