## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**PARISH OF LAFOURCHE**                    **CIVIL ACTION**

**VERSUS**                                 **NO.  23-3472 c/w**
                                              **23-3479, 23-3475**

**INDIAN HARBOR**                          **SECTION: "E" (5)**
**INSURANCE COMPANY, ET AL.**

*Applies to: All Cases*

### ORDER AND REASONS

Before the Court is a Motion to Lift Stay[1] filed by Plaintiff, the Parish of Lafourche. Defendants, Certain Underwriters at Lloyds, London, Certificate Number AMR-41329-06, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Safety Specialty Insurance Company, Old Republic Union Insurance Company, and HDI Global Specialty SE, oppose the Motion.[2] Plaintiff filed a reply.[3] The parties filed supplemental briefing.[4]

Some of the subscribers to the Lloyds, London, Certificate Number AMR-41329-06, and HDI Global Specialty SE are foreign insurers.[5] The remaining Defendants are domestic companies.

---

[1] R. Doc. 35.
[2] R. Doc. 36.
[3] R. Doc. 37.
[4] R. Docs. 43, 46.
[5] R. Doc. 36. Plaintiff originally three separate lawsuits, naming the domestic insurers in one suit and the two foreign insurers in separate suits, respectively. The Court granted Defendants' unopposed motion to consolidate the suits. R. Doc. 16.

## BACKGROUND

This is a dispute over insurance coverage in the wake of Hurricane Ida, which struck the Louisiana coast in August 2021 and damaged many of the Parish's governmental buildings.[6] Sedgwick, an insurance adjusting service retained by the Defendants, produced a rough estimate of approximately $35 million in damages to the Parish's buildings and other property.[7] Nevertheless, the Defendants tendered only $19 million to the Parish—$16 million less than the adjustment. The Parish alleges the amount tendered is "arbitrary," "capricious," and evidence of "bad faith."[8]

On June 15, 2023, the Parish sued Defendants in the 17th Judicial District Court, LaFourche Parish.[9] On August 16, 2023, the Defendants removed the suit to this Court pursuant to 9 U.S.C. §§ 202, 203, 205, and 18 U.S.C. § 1332.[10] Defendants' primary basis for the removal is their contention that the insurance policy at issue in this case contains a "valid arbitration clause [that] is governed by" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which gives rise to federal jurisdiction.[11] Defendants also assert that, if there is no federal question jurisdiction, there exists complete diversity of citizenship.[12]

On October 31, 2023, Defendants moved to compel arbitration and stay these proceedings on the basis that the insurance contract contained a valid arbitration clause governed by the Convention.[13] On November 1, 2023, Plaintiff filed a motion to

---

[6] R. Doc. 1-2 at pp. 1–4.
[7] *Id.* at p. 6.
[8] *Id.*
[9] *See generally id.*
[10] R. Doc. 1. Plaintiffs filed three suits against Defendants in state court, each removed to federal Court and consolidated with this action. R. Doc. 16. *See also* Civ. A. No. 23-cv-3479 (E.D. La. Aug. 16, 2023); Civ. A. No. 23-cv-3475 (E.D. La. Aug. 16, 2023).
[11] *See generally* R. Doc. 1.
[12] *Id.*
[13] R. Doc. 19.

remand[14] the claims against all Defendants, which this Court denied on February 2, 2024.[15] The Court determined that it has diversity jurisdiction over the action as well as federal question jurisdiction under the Convention and the F.A.A., and that *Burford* abstention is not appropriate in this case.[16]

The Plaintiff's opposition to the original motion to stay and compel arbitration centered on the argument that the insurers waived their right to arbitration as a result of the policy endorsements containing service-of-suit and applicable law clauses.[17] The Court examined whether the service-of-suit clause guarantees the Plaintiff the right to pursue the suit in court and is, in effect, a waiver of the right to compel arbitration because an arbitration tribunal is not a court of competent jurisdiction.[18] The Court held the "service-of-suit clause does not constitute a waiver of Defendants' rights under the arbitration clauses;" rather, the service-of-suit clause complements the arbitration clause by establishing a forum where the parties may enforce the arbitration award.[19] On February 2, 2024, the Court granted Defendants' motion to stay and compelled arbitration.[20]

Relevant to the instant motion, Plaintiff requests that the Court reconsider its prior order[21] and lift the stay solely as to the Defendant domestic insurers because of an

---

[14] R. Doc. 20.
[15] R. Doc. 33.
[16] *See generally id.*
[17] R. Doc. 23.
[18] R. Doc. 34, p. 5.
[19] *Id.* at p. 7. Although not raised by the parties, the Court additionally noted "that although a plaintiff may have separate contracts with each of the insurers, the application of equitable estoppel against an argument that arbitration does not apply to non-signatories is appropriate." *Id.* at n.39 (collecting cases).
[20] *See generally id.*
[21] *Id.*

intervening change in the law.[22] The parties agree to continue to arbitrate as to the foreign insurers.[23]

## LAW AND ANALYSIS

The Court granted Defendants' motion to stay and compel arbitration as to all foreign and domestic insurers on February 2, 2024.[24] The Plaintiff argues that the recent decision in *Police Jury of Calcasieu Parish v. Indian Harbor Insurance Co.*,[25] in which the Louisiana Supreme Court answered certified questions from the district court in the Western District of Louisiana, justifies this Court reconsidering its prior decision.[26] Plaintiff argues that the Louisiana Supreme Court in *Police Jury* determined that domestic insurer defendants "are prohibited under Louisiana law from invoking the doctrine of equitable estoppel to enforce an arbitration clause contained in another insurer's policy – because doing so conflicts with the positive law of La. R.S. 22:868."[27] As a result, Plaintiffs argue that, as to the domestic insurers, this Court should reconsider its prior order, lift the stay, and vacate the order compelling arbitration.[28]

Defendants argue that *Police Jury* has no bearing on the Convention-governed arbitration agreement between the parties.[29] Defendants argue that, in this case, federal common law preempts Louisiana law, the relevant equitable estoppel framework is provided by federal rather than state law, and federal equitable estoppel requires the

---

[22] R. Doc. 35-1, p. 1.
[23] *See* R. Doc. 35 ("Motion to Lift Stay Against the Domestic Insurance Carriers"); R. Doc. 43, p. 4 ("[T]he Parish of Lafourche[] request[s] that this Court lift its stay, vacate its order compelling arbitration, and allow this case against domestic insurers to proceed to trial."); *See* R. Doc. 46, p. 11 ("[T]he court should . . . maintain the Court's current orders staying the litigation and compelling the plaintiff to arbitrate all matters in dispute against all insurers, domestic and foreign.").
[24] R. Doc. 34.
[25] 395 So. 3d 717 (La. 2024), *reh'g denied*, 397 So. 3d 424 (La. Dec. 12, 2024).
[26] *See* R. Doc. 35.
[27] *Id.* at p. 5.
[28] R. Doc. 35-1, p. 7.
[29] R. Doc. 36, p. 3.

case remain stayed as to all insurers under the Convention.[30] Defendants rely on "Fifth

Circuit binding precedent [that] controls and requires denial of [Plaintiff's] motion[]."[31]

## I.    *Bufkin Enterprises, LLC v. Indian Harbor Insurance Co.*,[32] which is binding on this Court, permits domestic insurers to compel arbitration using federal common law equitable estoppel.

In 2000, in *Grigson v. Creative Artists Agency, LLC*, the Fifth Circuit held that a

nonsignatory to an arbitration clause in a distribution agreement may be compelled to

arbitration through the doctrine of equitable estoppel.[33] The Fifth Circuit based its

decision on whether the plaintiff raised allegations of "interdependent and concerted

misconduct" between a signatory and non-signatory defendant.[34] The Fifth Circuit

concluded that a nonsignatory may be compelled to arbitration if the plaintiff alleges

that the nonsignatory engaged in "interdependent and concerted misconduct" with the

signatory to the arbitration agreement, resulting in claims that are "intertwined with,

and dependent upon" the agreement.[35] The Fifth Circuit reasoned that equitable

estoppel is appropriate in this situation because "[a]lthough [the signatory was] not

sued (an obvious attempt to make an end-run around the arbitration clause, . . .), [the

signatory] nevertheless will be involved extensively—and, no doubt, quite expensively—

in this dispute . . . ."[36]

In 2024, in *Bufkin*, the Fifth Circuit endorsed the *Grigson* reasoning on equitable

estoppel to allow nonsignatory domestic insurers in a surplus lines policy to compel

arbitration. The *Bufkin* plaintiff obtained surplus lines insurance coverage through ten

---

[30] *Id.* at pp. 6-9.
[31] *Id.* at p. 9.
[32] 96 F.4th 726, 732 (5th Cir. 2024) (per curiam).
[33] *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 530-31 (5th Cir. 2000).
[34] *Id.* at 528.
[35] *Id.* at 530-31.
[36] *Id.* at 530.

insurers: two foreign insurers and eight domestic insurers.[37] The policy contained language stating that "this contract shall be constructed as a separate contract between [plaintiff] and each of the [insurers]."[38] The insurance policy contained an arbitration provision, which required the parties to arbitrate any dispute in New York.[39] After Hurricane Ida, plaintiff sued only the domestic insurers in Louisiana state court, alleging that those insurers as a group withheld payment under the policy.[40] Plaintiff filed an amended petition, naming the foreign insurers as defendants and alleging they engaged in the same conduct alleged against the domestic insurers.[41] The Fifth Circuit surmised that the "amended petition was expressly filed for the purpose of then dismissing the foreign insurers" with prejudice so that Plaintiff could circumvent arbitration under the Convention.[42] After dismissing the foreign insurers with prejudice, the domestic insurers then removed the action to federal court, claiming both federal question and diversity jurisdiction.[43] The domestic insurers subsequently moved to compel arbitration.[44]

The district judge for the Western District of Louisiana originally denied the motion to compel arbitration, reasoning that the Convention did not apply to the domestic insurers because the insurance policy contained "separate contracts" as to each insurance provider.[45] The district court further held that "equitable estoppel could not

---

[37] *Bufkin*, 96 F.4th at 727.
[38] *Id.*
[39] *Id.* at 728.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Bufkin Enters. LLC v. Indian Harbor Ins. Co.*, No. 2:21-CV-04017, 2023 WL 2393700, at *2 (W.D. La. Mar. 7, 2023), *rev'd and remanded sub nom.*, *Bufkin Enters., L.L.C. v. Indian Harbor Ins. Co.*, 96 F.4th 726 (5th Cir. 2024).
[44] *Bufkin*, 96 F.4th at 728.
[45] *Id.* at 729. Accordingly, the court reasoned that no domestic insurer was party to a Convention-governed arbitration agreement with a foreign insurer.

be a basis to invoke the Convention because [plaintiff's] claims were asserted only against the domestic insurers after the foreign insurers had been dismissed with prejudice" from the case.[46]

The Fifth Circuit reversed the district court, finding the district court abused its discretion by failing to apply federal common law equitable estoppel and compel arbitration under the Convention.[47] Applying *Grigson*, the Fifth Circuit held that equitable estoppel may be applied to enforce arbitration agreements, even as to non-signatories,[48] when "a signatory to a contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract."[49] The Fifth Circuit noted that, in her amended petition, plaintiff did not "differentiate between conduct of foreign and domestic insurers," and she alleged the foreign insurers engaged in the same culpable conduct as the domestic insurers.[50] The court concluded that, because plaintiff alleged there was "substantially interdependent and concerted conduct by the domestic and foreign insurers,"[51] equitable estoppel was appropriate to compel arbitration under the Convention.[52] The Fifth Circuit further noted that the district court improperly focused on the fact that the plaintiff had dismissed the domestic insurers from the action with

---

[46] *Id.*

[47] *Id.* The Court did not conclude whether the Policy was "one overarching policy agreement" or whether it was "ten separate contracts" because, even assuming ten contracts existed, the plaintiff alleged "substantially 'interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id.* at 730-31.

[48] *Id.* ("If we presume there are ten separate contracts, the signatories to the arbitration agreements subject to the Convention are [plaintiff] and the foreign insurers. The domestic insurers are non-signatories.").

[49] *Id.* at 730 (internal quotation marks omitted) (quoting *Pontchartrain Nat. Gas Sys. v. Tex. Brine Co.*, 317 So. 3d 715, 743 (La. Ct. App. 1st Cir. 2020); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)).

[50] 96 F.4th at 731-32.

[51] *Id.* at 731.

[52] *Id.* at 732 ("*Grigson* simply asks whether the signatory to the arbitration agreement (here, Bufkin) raises allegations of substantially interdependent and concerted misconduct by both a non-signatory (the domestic insurers) and one or more signatories to the contract (the foreign ones).").

prejudice because "indulging [plaintiff]'s pleading-and-then-dismissing gamesmanship by denying arbitration turns on its head the axiom that '[t]he linchpin for equitable estoppel is equity—fairness.'"[53] Finally, the Fifth Circuit concluded that "there is no tension between [the application of equitable estoppel] and Louisiana law."[54]

The Fifth Circuit in *Bufkin* cautioned that whether foreign insurers are formally named in the action is not dispositive; rather,

> On the record before us, Bufkin has alleged substantially interdependent and concerted conduct by the domestic and foreign insurers. Bufkin's amended petition does not differentiate between conduct of foreign and domestic insurers . . . . It is of no moment that Bufkin is no longer pursuing claims against the foreign insurers; *Grigson* does not require that. *Grigson* simply asks whether the signatory to the arbitration agreement (here, Bufkin) raises allegations of substantially interdependent and concerted misconduct by both a non-signatory (the domestic insurers) and one or more signatories to the contract (the foreign ones) . . . . While Bufkin was certainly free to name and then dismiss the foreign insurers, the district court was not free to disregard them in considering the domestic insurers' motion to compel arbitration. Yet in focusing on Bufkin's dismissal of the foreign insurers, the district court neglected to consider the foreign insurers' part in the seamless coverage agreement struck by the parties, and Bufkin's interactions with the insurers. Honing in, that coverage arrangement included the arbitration clause that afforded the insurers—foreign and domestic—"predictability in resolving disputes dealing with the substantial risks presented by a surplus lines insurance policy." The district court failed to apply *Grigson*'s "interdependent and concerted misconduct" test. This was an abuse of discretion.[55]

---

[53] *Id.*

[54] *Id.* at 733. The Court also explained that La. R.S. § 22:868 "does not reverse preempt the Convention because the McCarran-Ferguson Act does not apply to treaties." 96 F.4th at 732 (citing *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 718 (5th Cir. 2009) (en banc)). "[T]he McCarran-Ferguson Act permits states to reverse-preempt an otherwise applicable 'Act of Congress' by enacting their own regulations of the insurance industry." *McDonnel Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 431 (5th Cir. 2019), *as revised* (June 6, 2019). The Fifth Circuit has held that this Act does not "reverse-preempt" the Convention because the Convention is a treaty, which is not an "Act of Congress." *Safety National*, 587 F.3d at 731.

[55] *Bufkin*, 96 F.4th at 731-32.

The Fifth Circuit applied federal principles of equitable estoppel to stay a case and compel a nonsignatory to arbitration under the Convention in both *Grigson* and *Bufkin*.[56] In *Bufkin*, the Fifth Circuit described the distinction between interpretation of La. R.S. § 22:868 under Louisiana law and the application of equitable estoppel to compel arbitration under the Convention—referred to by the Fifth Circuit as "*Grigson* estoppel"—as two separate legal questions: "Having resolved this appeal on *Grigson* estoppel grounds, § 22:868's impact is not a live issue in this dispute."[57] Applying *Grigson* estoppel, the *Bufkin* court compelled the domestic insurers to arbitration based on application of federal common law. *Bufkin* instructs district courts to apply federal common law equitable estoppel to compel domestic insurers to arbitrate, even when the domestic insurers are nonsignatories to an agreement with foreign insurers. *Bufkin* and *Grigson* continue to be good law in the Fifth Circuit, and "[a] district court must apply circuit precedent unless that precedent has been overruled."[58] As a result, the Court will apply federal common law principles of equitable estoppel to determine arbitrability in this case.

---

[56] 210 F.3d 524 (5th Cir. 2000); 96 F.4th 726 (5th Cir. 2024). Other circuit courts have compelled arbitration against non-signatories based on principles of equitable estoppel. *See Reeves v. Enter. Products Partners*, LP, 17 F.4th 1008 (10th Cir. 2021); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999); *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1088 (11th Cir. 2024) (applying interconnected and intertwined analysis, like in *Grigson*, and reversing district court order compelling arbitration against nonsignatory employees because employees "did not rely on their employment contracts to assert their Jones Act and general maritime claims").

[57] *Bufkin*, 96 F.4th at 733. Plaintiff points out that the district court in *Belmont Commons* premised its decision on the assumption that *Bufkin* involved a determination of the applicable law under *Erie R. Co. v. Tompkins*. *See* R. Doc. 43, p. 2 (citing *Certain Underwriters at Lloyd's London v. Belmont Commons LLC*, No. 22-3874, 2025 WL 239087, at *6 (E.D. La. Jan. 17, 2025) ("Judge Fallon's analysis specifically included an examination of 'whether the applicable equitable estoppel jurisprudence is a matter of state law, meaning that the Louisiana Supreme Court controls, or a matter of federal law, meaning that the Fifth Circuit controls.'"). Neither the *Bufkin* nor *Grigson* courts found it necessary to conduct an "*Erie* guess" on any issue of Louisiana law.

[58] *United States v. Martin*, No. 6:20-CR-00047-01, 2024 WL 129337 (W.D. La. Jan. 11, 2024) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3rd 425, 442 (5th Cir. 2000)).

Furthermore, the application of federal common law equitable estoppel in *Grigson* and *Bufkin* is in line with Supreme Court precedent as to the determination of whether a court should apply principles of federal common law—rather than state law. In *Boyle v. United Technologies Corporation*, the United States Supreme Court promulgated a two-part test for determining whether a court should apply federal common law rather than state law.[59] First, a court assesses whether the case presents a uniquely federal interest necessitating the application of federal common law.[60] Second, the court assesses whether application of state law either conflicts with or frustrates specific objectives of federal legislation.[61] The Supreme Court in *Boyle* noted that "where the federal interest requires a uniform rule, the entire body of state law applicable to the area conflicts and is replaced by federal rules."[62]

On remand from the Supreme Court in *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,[63] Judge Tjoflat of the Eleventh Circuit concluded that it is necessary to apply federal common law principles of equitable estoppel to disputes arising under the Convention.[64] Applying the test under *Boyle*, Judge Tjoflat concluded:

> [A]s to the first part of the test, we have a quintessential "uniquely federal interest." The New York Convention is an international treaty with international obligations. The whole goal of the New York Convention is to standardize the enforcement of international arbitration agreements, and there is a strong federal interest in making sure that the United States lives up to its treaty obligations . . . . As to the second part of the test, allowing each state or international law to impose its own test for threshold

---

[59] 487 U.S. 500, 506-07 (1988).
[60] *Id.* at 507.
[61] *Id.*
[62] *Id.* at 508.
[63] 590 U.S. 432 (2020).
[64] *Outokumpu Stainless USA, LLC v. Coverteam SAS*, No. 17-10944, 2022 WL 2643936, at *6 (11th Cir. July 8, 2022) (Tjoflat, J., concurring) (noting that the Eleventh Circuit "must apply federal common law in determining whether equitable estoppel applies in New York Convention cases") (on remand from *GE Energy*, 590 U.S. 432).

questions of arbitrability would create an unmanageable tangle of arbitration law in the United States, lead to forum shopping, and frustrate the uniform standards the New York Convention and Chapter 2 of the FAA were enacted to create . . . . In short, the *Boyle* test counsels in favor of applying federal common law to threshold questions of arbitrability.[65]

Various courts across the federal circuits have similarly concluded the Convention presents a uniquely federal interest necessitating the application of uniform federal common law.[66] "In cases involving the New York Convention, in determining the arbitrability of federal claims by or against non-signatories to an arbitration agreement, [a court] appl[ies] 'federal substantive law,' for which [the court] look[s] to 'ordinary contract and agency principles.'"[67] "While it is recognized that state law determines questions concerning the validity, revocability, or enforceability of contracts generally, Section 2 of the Federal Arbitration Act, 9 U.S.C.A. § 2, and the Convention . . . enforced by 9 U.S.C.A. §§ 201 *et seq.*, create a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act."[68]

The Court is persuaded by Judge Tjoflat's *Boyle* conclusion, as well as the analysis employed by the Second, Fifth, Seventh, and Ninth Circuits, that arbitrability under the Convention serves a unique federal interest that must be subject to principles of federal common law.

---

[65] *Id.* (citations omitted) (applying *Boyle*).
[66] *See, e.g.*, *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 335 n.12 (5th Cir. 2010) ("Like the FAA, the Convention also creates 'a body of federal substantive law of arbitrability,' displacing inconsistent state law."); *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 500 F.3d 571 (7th Cir. 2007); *Chemaly v. Lampert*, 717 F. Supp. 3d 1248, 1272 (S.D. Fla. 2024) ("The Court similarly applies federal law to determine whether equitable estoppel applies to Non-Signatories here."); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Intern., Inc.*, 198 F.3d 88, 96 (2d Cir. 1999) ("When we exercise jurisdiction under Chapter Two of the FAA, we have compelling reasons to apply federal law, which is already well-developed, to the question of whether an agreement to arbitrate is enforceable."); *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1168 (9th Cir. 2021).
[67] *Setty*, 3 F.4th at 1168 (quoting *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)).
[68] Michael A. Rosenhouse, *Application of Equitable Estoppel Against Nonsignatory to Compel Arbitration Under Federal Law*, 43 A.L.R. Fed. 2d 275 (2010) (updated December 2024).

**II.  *Police Jury* is not binding on this Court, and it did not address the applicability of the Convention when domestic and foreign insurers issued the policy, as existed in *Bufkin*.**

In *Police Jury*, like in *Bufkin*, the plaintiff sued several foreign and domestic insurers to resolve a coverage dispute after Hurricane Ida.[69] The policy provided that each insurer in the syndicate has its own separate contract with the plaintiff.[70] Four days after filing suit in state court, plaintiff dismissed the two foreign insurers with prejudice.[71] After removing the case to the district court for the Western District of Louisiana, the insurers moved to stay the case and compel arbitration.[72] In their motion, the insurers argued that *Bufkin* required the district court to compel arbitration under the Convention through equitable estoppel.[73] Noting tension between the relevant Fifth Circuit cases and Louisiana law, the district judge for the Western District issued an order certifying three questions to the Louisiana Supreme Court.[74]

The Louisiana Supreme Court in *Police Jury* answered the three certified questions[75] from the Western District of Louisiana, including the relevant third question:

> [W]hether a domestic insurer may invoke the doctrine of equitable estoppel to enforce an arbitration clause contained in another insurer's policy,[76] thereby circumventing the prohibition of arbitration clauses

[69] *Police Jury of Calcasieu Par. v. Indian Harbor Ins. Co.*, No. 2:24-CV-00342, 2024 WL 1545135, at *1 (W.D. La. Apr. 9, 2024), *certified question accepted*, 2024-00449 (La. 6/19/24), 386 So. 3d 306, *and appeal dismissed*, No. 24-30261, 2024 WL 4553973 (5th Cir. June 25, 2024), *and certified question answered*, 395 So. 3d 717 (La. 2024), *reh'g denied*, 397 So. 3d 424 (La. 2024).
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.* at *2-3.
[75] *See* No. 24-342, R. Doc. 34 (W.D. La.) (docketed Louisiana Supreme Court order answering certified questions); 395 So. 3d 717, 720 n.1 (La. 2024) (explaining procedure for federal district courts to certify questions under Louisiana Supreme Court Rule XII).
[76] "Another insurer's policy" relates to the "separate contracts" in surplus lines policies between each insurer and the insured, making the domestic insurers nonsignatories to the foreign insurance policies. *See* 395 So. 3d at 729 ("The first prong [of the third question] questions whether a domestic insurer may use equitable estoppel under Louisiana law to enforce arbitration via a foreign insurer's policy.").

under La. R.S. 22:868(A)(2) . . . . [and] whether estoppel can be applied to political subdivisions without satisfying the heightened standard adopted by this Court for its application to public bodies.[77]

The Louisiana Supreme Court addressed the Fifth Circuit's application of federal equitable estoppel to compel arbitration in *Bufkin*:

> With all due respect, we disagree with the Federal Court's recent per curiam in *Bufkin Enterprises, L.L.C. v. Indian Harbor Ins. Co.* . . . this conclusion [is] flawed and not supported by Louisiana law. Notably, domestic insurers do not fall under the rules of the Convention. . . . The *Bufkin* court failed to acknowledge that Louisiana has positive law on this issue. Indeed, La. R.S. 22:868 precludes domestic insurers' use of estoppel to compel arbitration. Defendants' reliance on *Bufkin* is misplaced. Thus, we find a domestic insurer may not resort to equitable estoppel under Louisiana law to enforce an arbitration clause in another insurer's policy in contravention of the positive law prohibiting arbitration in La. R.S. 22:868(A)(2).[78]

The Louisiana Supreme Court in *Police Jury* further noted that in 2024, after *Bufkin* was decided, the Fifth Circuit correctly applied Louisiana law in *S. K. A. V., L.L.C. v. Indep. Specialty Ins. Co.*[79] and held that "La. R.S. 22:868 prohibits arbitration clauses in all Louisiana-issued insurance contracts."[80]

This Court notes that, while *S. K. A. V., L.L.C.* involved interpretation of La. R.S. 22:868, the case is distinguishable from *Bufkin*. *S. K. A. V., L.L.C.* did not involve foreign insurers, nor did it involve the application of the Convention.[81] In *S. K. A. V., L.L.C.*, the dispute centered on a surplus lines policy between the plaintiff and a

---

[77] *Id.* at 720.

[78] *Id.* at 729.

[79] 103 F.4th 1121, 1124 (5th Cir. 2024).

[80] 395 So. 3d at 728. The district court for the Western District of Louisiana, applying *Police Jury*, lifted the stay as to the domestic insurers without issuing a written opinion. *Police Jury*, No. 24-342, R. Doc. 35 (W.D. La. Oct. 31, 2024). The insurers appealed this order. *Id.* at R. Doc. 37.

[81] *See* 103 F.4th at 1122. *See Bros. Petrol., L.L.C. v. Certain Underwriters at Lloyd's*, No. CV 23-445, 2024 WL 4443966, at *5 (E.D. La. Oct. 8, 2024) ("[T]hat case did not implicate the New York Convention because no foreign parties were involved. Accordingly, *S.K.A.V.* does not disrupt prior settled case law holding that '§ 22:868 does not come into play' in cases that fall under the Convention because the Convention, as an international treaty, controls.").

*domestic* insurer—no foreign insurer was party to the policy. [82] The Fifth Circuit, venturing an "*Erie* guess,"[83] held that La. R.S. § 22:868's arbitration prohibition voided the arbitration provision in the surplus lines policy.[84] Unlike the Fifth Circuit's decisions in *Grigson* and *Bufkin*, which applied federal common law estoppel *under the Convention*, the Fifth Circuit in *S. K. A. V., L.L.C.* interpreted only La. R.S. § 22:868 under *Erie* based on Louisiana state law as the case involved a Louisiana hotel owner and a domestic insurer, Independent Specialty Insurance Company, which issued coverage under a surplus lines policy.[85] The case made no reference to the Convention.[86]

The Louisiana Supreme Court in *Police Jury* did not consider the impact of there being foreign insurers under the surplus lines policy, which is what renders the policy subject to the Convention, as occurred in *Bufkin*.[87] As recognized in *Bufkin*, the Fifth Circuit has held that the Convention–a treaty—preempts La. R.S. 22:868 and is interpreted and applied according to federal common law principles of equitable estoppel.[88]

Instead, the analysis in *Police Jury* focused solely on the interpretation of La. R.S. 22:868 under Louisiana law—not on whether "the arbitration agreement between the parties is [governed by] the Convention through [federal common law] equitable

---

[82] *See* 103 F.4th at 1122.

[83] *Id.* ("This appeal raises a question of state law on which federal district courts in Louisiana disagree: Does § 22:868 of the Louisiana Revised Statutes void an arbitration provision in a contract for surplus lines insurance? We venture an *Erie* guess and answer 'yes.'").

[84] *Id.*; *id.* at 1125 ("General principles of contractual freedom, however normatively attractive in the surplus lines insurance business, cannot trump specific statutory commands.").

[85] *Id.* at 1122.

[86] *See generally id.*

[87] The Court notes it is possible the Louisiana Supreme Court did not address the effects of the Convention because the foreign insurers had been dismissed from the action. However, *Bufkin* instructs this is not dispositive as to the applicability of equitable estoppel in compelling arbitration under the Convention. 96 F.4th 726, 732 (5th Cir. 2024) (per curiam).

[88] *See Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 718 (5th Cir. 2009) (en banc).

estoppel."[89] While it is true the Louisiana Supreme Court in *Police Jury* disagreed with the Fifth Circuit's application of federal common law estoppel in *Bufkin*, this Court is not bound by *Police Jury* on matters of federal common law. Given the uniquely federal interest apparent in matters subject to the Convention and no intervening Fifth Circuit decision, the Court remains bound by the Fifth Circuit's application of "*Grigson* estoppel" under the Convention in *Bufkin*.[90]

Several other sections of this Court have addressed motions to lift stays based on the Louisiana Supreme Court's decision in *Police Jury*. In *Certain Underwriters at Lloyd's London v. Belmont Commons LLC*, the trial judge originally entered an order staying the case and compelling arbitration with eleven insurers, including both domestic and foreign insurers.[91] In addition to compelling arbitration against the foreign insurers under the Convention, the court compelled arbitration against the domestic insurers based on the doctrine of equitable estoppel as recognized by *Bufkin*.[92]

After the *Police Jury* decision was handed down, in *Belmont Commons*, the judge granted a motion to lift the stay and vacated the arbitration order, stating that the "Court agrees with Plaintiffs that *Police Jury* conclusively establishes that § 22:868(A) operates to invalidate arbitration clauses in insurance contracts."[93] The court in *Belmont Commons* further held that "whether a plaintiff can be compelled to arbitrate with a domestic insurer based on the plaintiff's arbitration agreement with a foreign

---

[89] *Police Jury of Calcasieu Parish v. Indian Harbor Ins. Co.*, 395 So. 3d 717, 733 (La. 2024).
[90] *See Bufkin Enters., L.L.C., v. Indian Harbor Ins. Co.*, 96 F.4th 726, 731-33 (5th Cir. 2025).
[91] *Certain Underwriters at Lloyd's London v. Belmont Commons LLC*, No. CV 22-3874, 2025 WL 239087, at *2 (E.D. La. Jan. 17, 2025).
[92] *Id.* ("The United States Court of Appeals for the Fifth Circuit has held that 'application of equitable estoppel is warranted when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignator[ies] and one or more of the signatories to the contract.'") (internal quotation marks omitted) (citing *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000)).
[93] *Id.* at *5.

insurer [and equitable estoppel] is a matter of state law, not federal law."[94] In reaching this conclusion, the district court relied upon the Supreme Court case *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, explaining that *GE Energy* "clearly contemplated that state principles of equitable estoppel, and not federal ones, apply" to compel arbitration under the Convention.[95] The *Belmont Commons* court concluded that the "Louisiana Supreme Court, rather than the Fifth Circuit, controls on the issue of estoppel."[96] Thus, in *Belmont Commons*, the trial judge determined that the Convention did not apply to contracts with domestic insurers because "the Louisiana Supreme Court, in *Police Jury*, unambiguously rejects the use of equitable estoppel to subject domestic insurers to the Convention."[97] As a result, the trial court granted the Plaintiff's motion to lift the stay and vacated the order compelling arbitration.[98]

Several other sections of this Court have adopted the *Belmont Commons'* analysis, reversed their prior issuances of stays, and ordered plaintiffs to arbitration with domestic insurers, also without considering the effect of these foreign insurers also

---

[94] *Id.* at *8 (discussing *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 440 (2020)). The district court characterizes the issue as turning on whether the Convention applies: "[I]f the Convention applies to the dispute, it controls and the arbitration agreement is enforceable. However, if the Convention does not apply, state law invalidating arbitration agreements in insurance contracts can reverse-preempt the FAA and control. With that in mind, the Court now turns to the instant dispute. The parties agree that as to the Plaintiffs' contracts with the foreign insurers, the Convention applies and the arbitration agreements are therefore enforceable. However, Plaintiffs contend that in the wake of *Police Jury*, the arbitration agreements in their contracts with the domestic insures are invalid because (1) state law, indeed, operates to invalidate the arbitration clauses and (2) equitable estoppel does not apply to subject the domestic parties to the Convention through the foreign parties' contracts." *Id.* at *4.
[95] *Id.* at *7; 590 U.S. at 440.
[96] 2025 WL 239087, at *7 (citing *Ward v. State Farm Mut. Auto. Ins. Co.*, 539 F.2d 1044, 1050 (5th Cir. 1976) ("[T]he Supreme Court of Louisiana [ ] is the ultimate authority on questions of state law.")).
[97] *Id.* at *8.
[98] *Id.* at *10. The Court further determined that a continued discretionary stay was not warranted, and "Plaintiffs would be more drastically harmed by an adverse decision on the entry of a stay." *Id.*

being parties to the insurance policy has on the analysis.[99] The Court notes that, while the district court in *Belmont Commons* relied on *GE Energy* to support its reliance on Louisiana state law, "[i]n *GE Energy*, the Supreme Court specifically concluded, '[w]e hold only that the New York Convention does not conflict with the enforcement of arbitration agreements by non-signatories under domestic-law equitable estoppel doctrines.' The Supreme Court 'did not determine whether *GE Energy* could enforce the arbitration clauses under principles of equitable estoppel *or which body of law governs that determination.*'"[100] As a result, this Court is unpersuaded that *GE Energy* dictates the conclusion that Louisiana law governs the applicable principles of equitable estoppel. This Court finds that *Police Jury* is not an intervening change in the law in this case.

The other district court cases applying *Police Jury* focus on whether principles of equitable estoppel are matters of state law or federal law, without analyzing whether the plaintiff alleges concerted misconduct amongst both the domestic and foreign insurers, subjecting the nonsignatory domestic insurers to the Convention.[101] Applying *Bufkin* and *Grigson*, the Court finds the application of equitable estoppel to enforce arbitration under the Convention is a matter of federal common law. Guided by *Bufkin*, the Court will continue to apply *Grigson* estoppel—federal common law estoppel—to this case.

---

[99] *See, e.g.*, *Crescent City Surgical Operating Co. v. Certain Underwriters at Lloyd's, London*, No. CV 22-2625, 2025 WL 239404, at *6 (E.D. La. Jan. 17, 2025) ("Accordingly, the Court finds no reason to depart from its holding in *Belmont* and affirms that *Police Jury* constitutes an 'intervening change in the controlling law.'"). This case similarly involved a surplus lines policy with foreign and domestic insurers, and the foreign insurers were still party to the action. *See, e.g.*, *3501 N. Causeway Ass'ns., LLC v. Certain Underwriters at Lloyd's, London,* No. CV 22-3787, 2025 WL 388627, at *1 (E.D. La. Feb. 4, 2025); *Apex Hospitality Grp., LLC v. Indep. Specialty Ins. Co.*, No. CV 23-2060, 2025 WL 457874 (E.D. La. Feb. 11, 2025).

[100] 3 F.4th at 1168 (quoting 590 U.S. 432, 445 (2020) (emphasis added)).

[101] *See, e.g.*, *Belmont Commons*, 2025 WL 239087, at *6-7.

### III. Applying *Bufkin*, the instant case will remain stayed, and Plaintiff's motion will be denied.

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry."[102] For an arbitration agreement to fall under the Convention, "(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen."[103] In the Fifth Circuit, the doctrine of equitable estoppel subjects nonsignatories to arbitration "when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignator[ies] and one or more of the signatories to the contract."[104]

In this case, the first element is met as the policy contains an arbitration clause, requiring arbitration of "[a]ll matters in difference between the Insured and the Companies . . . in relation to this insurance . . . ."[105] The second element is met as the agreement provides for arbitration in a Convention signatory nation: the agreement requires arbitration in New York,[106] which is located in the United States, a signatory nation to the Convention. The third element is met as the "agreement arises out of a commercial legal relationship," or a contract for insurance coverage.

---

[102] *Freudensprung v. Offshore Tech. Svcs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004).
[103] *Id.*
[104] *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527-28 (5th Cir. 2000); *see Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004); *Bufkin*, 96 F.4th 726.
[105] R. Doc. 19-2, p. 37.
[106] *Id.*

Under the fourth element,[107] as to the domestic insurers, the "Contract Allocation Endorsement" to the insurance policy provides that "[t]his contract shall be constructed as a separate contract between the Insured and each of the Underwriters."[108] Under this language alone, there is facial inapplicability of the Convention as to the domestic insurers, because neither party to the bilateral insurance agreements between plaintiff and those Defendants is a foreign citizen. Under *Grigson* and *Bufkin*, the Court next assesses "the foreign insurers' part in the seamless coverage agreement struck by the parties"[109] and whether a "signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignator[ies] and one or more of the signatories to the contract."[110]

Plaintiff alleges in the Complaint that "[a]ll of the above-named insurers hired Sedgwick and its adjusters to adjust petitioner's claim for damages."[111] Plaintiff alleges the insurers through Sedgwick failed to "perform an inspection and/or adjustment of damages on the contents of all buildings" and failed to "timely adjust this claim."[112] Plaintiff alleges "the above-named insurers have failed to tender those amounts owed and due" and have "acted arbitrarily and capriciously by holding Petitioner's funds without just cause," breaching their duty of good faith and fair dealing.[113] Plaintiff prays that Defendants be held liable "jointly, separately, and in solido" for damages.[114] Defendants' conduct alleged in the complaint "does not differentiate between conduct of

---

[107] The parties do not dispute that some of the subscribers to the Policy issued by Certain Underwriters at Lloyds, London, and HDI Global Specialty SE, foreign insurers in this case, are not American citizens and remain compelled to arbitrate under the Convention.
[108] R. Doc. 19-2, p. 4.
[109] 96 F.4th 726, 732 (5th Cir. 2024).
[110] *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000).
[111] R. Doc. 1-2, p. 2.
[112] *Id.* at p. 7.
[113] *Id.* at pp. 6-7.
[114] *Id.* at p. 8.

foreign and domestic insurers,"[115] other than emphasizing that the policy contained separate contracts of coverage with each insurer.[116] As a result, because the Plaintiff has alleged "substantially interdependent and concerted misconduct"[117] amongst all insurer defendants who provided coverage under one surplus lines policy, the "arbitration agreement between the parties is subject to the Convention through equitable estoppel" and "[t]here is no tension between this position and Louisiana law."[118]

The Louisiana Supreme Court's interpretation of La. R.S. § 22:868 in *Police Jury* does not alter this outcome as this Court is bound by Fifth Circuit decisions determining arbitrability under the Convention.[119] As a result, this case will remain stayed, and Plaintiff's motion to lift the stay will be denied.

Accordingly;

**CONCLUSION**

**IT IS ORDERED** that Plaintiff's Motion to Lift Stay[120] as to the Defendant domestic insurers is **DENIED**.[121]

**New Orleans, Louisiana, this 10th day of March, 2025.**

*Susie Morgan*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[115] *Bufkin Enters., L.L.C., v. Indian Harbor Ins. Co.*, 96 F.4th 726, 731 (5th Cir. 2024).
[116] R. Doc. 1-2, pp. 1-2.
[117] *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000); *Bufkin*, 96 F.4th at 731-33.
[118] *Bufkin*, 96 F.4th at 733. And, La. R. S. § 22:868 does not reverse preempt the Convention "because the McCarran-Ferguson Act does not apply to treaties." *Id.* at 732 (*citing Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 718 (5th Cir. 2009) (en banc)).
[119] *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021) (noting that district courts are not free to overturn Fifth Circuit decisions).
[120] R. Doc. 35.
[121] Additionally, the action remains stayed as to the two foreign insurer Defendants: Certain Underwriters at Lloyds, London, and HDI Global Specialty SE. *See 3501 N. Causeway Assocs., LLC v. Certain Underwriters at Lloyd's, London*, No. CV 22-3787, 2025 WL 388627, at *6 (E.D. La. Feb. 4, 2025) ("Plaintiff's agreement to arbitrate with the foreign insurers fall under the Convention and thus remains enforceable.").